[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
Facts
On June 5, 2001, the plaintiff, Sandra Wunder, Administratrix of the Estate of William Pityer, filed a wrongful death complaint against the defendants, Ronald Miceli and Waterford Petroleum, LLC ("Waterford Petroleum"), for damages allegedly sustained as the result of defendants' failure to provide a safe working environment for plaintiff's decedent, William Pityer. Mr. Pityer, an employee of the defendant Waterford Petroleum, was working as a cashier at a gas station and mart/snack shop located on Route 85 in Waterford on June 7, 1999 when he was shot and killed during an attempted robbery.
With respect to the defendant Waterford Petroleum, it is claimed: 1) that the company knew or should have known that the store's lack or inadequacy of security measures posed a danger of serious bodily harm to its employees; 2) that the company allowed its employees to work under such conditions based upon its economic interests; and 3) that the company knowingly and intentionally exposed Mr. Pityer to life threatening injury, aware that the armed robbery and resulting death of Mr. Pityer were substantially certain to flow from its actions.[1]
By motion to strike dated August 20, 2001, the defendant Waterford Petroleum moves to strike the third count of the plaintiff's complaint. The third count is the only count directed against this defendant. Waterford Petroleum claims that the action against it is barred by section 31-284 (a) of the Connecticut General Statutes, the exclusivity provision of the Workers' Compensation Act, and that the plaintiff has failed to allege facts sufficient to bring the claim within an exception to the exclusivity provision.
Discussion
"Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint, counterclaim or cross claim, or of any one or more counts thereof, to state a claim upon which relief can be granted . . . that party may do so by filing a motion to strike the contested pleading or part thereof." Practice Book section 10-39(a). "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Peter-Michael, Inc.v. Sea Shell Associates, 244 Conn. 269, 270, 709 A.2d 558 (1998). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Faulkner v. UnitedTechnologies Corp., 240 Conn. 576, 580, 693 A.2d 293 (1997). The court must "construe the complaint in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) Eskin v.CT Page 104Castiglia, 253 Conn. 516, 523, 753 A.2d 927 (2000). "A motion to strike admits all facts well pleaded; it does not admit legal conclusions or thetruth or accuracy of opinions stated in the pleadings." (Emphasis in original; internal quotation marks omitted.) Faulkner v. UnitedTechnologies Corp., supra, 250 Conn. 588. In deciding a motion to strike, "[t]he role of the trial court [is] to examine the [complaint], construed in favor of the plaintiffs, to determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) Dodd v. Middlesex Mutual Assurance Co.,242 Conn. 375, 378, 698 A.2d 859 (1997).
It is not disputed that the plaintiff's decedent was an employee of Waterford Petroleum at the time of his death.[2] "The purpose of the workmen's compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer." (Citations omitted; internal quotation marks omitted.) Mingachos v. CBS, Inc.,196 Conn. 91, 97, 491 A.2d 368 (1985). "Under typical workers' compensation statutes, employers are barred from presenting certain defenses to the claim for compensation, the employee's burden of proof is relatively light, and recovery should be expeditious. In a word, these statutes compromise an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation. (Citations omitted.) The purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes." Id., 97.
The exclusivity provision of the Workers' Compensation Act, section 31-284 (a), provides, in relevant part, as follows: "An employer who complies with the requirements of . . . this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained. . . ." In Jett v.Dunlap, 179 Conn. 215, 425 A.2d 1263 (1979), the Connecticut Supreme Court recognized a narrow exception to the exclusivity provision of the Act. In Jett, the Court held that the employee's action in tort against his employer was not barred by the Act because his injuries were intentionally inflicted by another employee identified as the "alter ego" of the employer. Id., 219.
Courts have been reluctant to expand the exception set forth in Jett, as evidenced by the holding in the case of Mingachos v. CBS, Inc.,196 Conn. 91, 100, 491 A.2d 368 (1985). "In the present appeal the plaintiff is really requesting that we extend judicially the Jett
exception to section 31-284 to include injuries to employees resulting from `intentional,' or `wilful,' or `reckless' violations by the employer CT Page 105 of safety standards established pursuant to federal and state laws, such as OSHA. In the absence of any such legislative direction, we decline to do so. . . ."
Referencing the Mingachos case and section 8A of the Second Restatement of Torts, the Court in Suarez v. Dickmont Plastics Corp., 229 Conn. 99,108, 639 A.2d 507 (1994) (Suarez I) held that "intent refers to the consequences of an act . . . [and] denote[s] that the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to follow from it. . . . A result is intended if the act is done for the purpose of accomplishing such a result or with knowledge that to a substantial certainty such a result will ensue." (Citations omitted; internal quotation marks omitted.)
In Suarez I, the plaintiff filed a complaint alleging severe and permanent injuries resulting from his employer's orders to clear hot molten plastic out of a plastic molding machine while the machine was in operation. The plaintiff alleged that he was told he could not employ a safer method of cleaning the machine; that he had to reach into the machine to clean it without turning the machine off, and that he would be fired if he did not comply with his employer's directions. The trial court granted the defendant's motion for summary judgment based on the exclusivity provision of the Workers' Compensation Act. On appeal, the decision was reversed on the grounds that a genuine issue of material fact existed as to whether the plaintiff's injury was "substantially certain" to follow from his employer's conduct. "Here, a jury could reasonably infer, from all the circumstances viewed in the light most favorable to the plaintiff, that the defendant's conduct constituted more than a mere failure to provide appropriate safety or protective measures, and that the plaintiff's injury was the inevitable and known result of the actions required of him by the defendant." Id., 111.
Even though Suarez I was reversed and remanded to the trial court for further proceedings, the Connecticut Supreme Court noted that it did not believe its holding would encourage significant additional litigation, for only in those rare instances when an employer's conduct allegedly falls within the very narrow exception to the act will such litigation result." (Emphasis added.) Id., 117-118. On remand, the jury rendered a verdict in favor of the plaintiff and the trial court refused to set it aside or render a judgment notwithstanding the verdict. The defendant appealed from that judgment. Suarez v. Dickmont Plastics Corp.,242 Conn. 255, 698 A.2d 838 (1997) (Suarez II).
In Suarez II, the Court restated the substantial certainty test set forth in Suarez I: "The substantial certainty test provides for the intent to injure exception to be strictly construed and still allows for CT Page 106 a plaintiff to maintain a cause of action against an employer where the evidence is sufficient to support an inference that the employerdeliberately instructed an employee to injure himself." (Emphasis added.)Suarez I, 110; Suarez II, 258. An employee claiming "intentional injury must rely on the intended tort theory or the substantial certainty theory. Under the former, the actor must have intended both the act itself and the injurious consequences of the act. Under the latter, the actor must have intended the act and have known that the injury was substantially certain to occur from the act." Suarez II, 280. The plaintiff in this case is proceeding under the substantial certainty theory.
The most recent appellate court decision addressing this issue isMelanson v. West Hartford, 61 Conn. App. 683, 767 A.2d 764 (2001). InMelanson, the plaintiff, a West Hartford police officer, sought damages for injuries sustained when a fellow officer accidentally shot him while in the process of executing a search warrant. Both officers were members of a tactical response team and the plaintiff claimed the defendant Town so poorly managed, trained, equipped and staffed the tactical response team that it could be charged with having intentionally created a situation that it knew, with substantial certainty, would cause the injuries suffered by the plaintiff.
The Melanson Court concluded that the factual allegations in the plaintiff's complaint did not pass the Suarez test. "[T]he alleged town failings on which the plaintiff rests his case are allegations of misconduct that address negligence rather than intentional misconduct. Failure to take affirmative remedial action, even if wrongful, does not demonstrate an affirmative intent to create a situation that causes personal injury. . . . [E]ven if the allegations somehow could be stretched to encompass a claim for intentional misconduct generally, the complaint provides no factual basis for a finding that the town was substantially certain that the specific injury that the plaintiff suffered would occur." Id., 689.
In the present case, the plaintiff's basic claim is that Waterford Petroleum allowed its employees to work under conditions which made the premises dangerously unsafe given the area's history of criminal activity. It allegedly refused to provide a safer work environment for "cost purposes", thereby making Waterford Petroleum aware that the robbery and Mr. Pityer's death were substantially certain to occur. The specified conduct, in paragraph 22 of the complaint, consists of the failure to provide certain security measures and allowing its employees to work under such conditions.
Under Melanson, the failure to take affirmative remedial action alone CT Page 107 is insufficient to qualify as intentional misconduct. Alleging that the subject premises were located in an area with a history of criminal conduct does not make the failure to provide a safer work environment the intentional creation of a dangerous condition that made Mr. Pityer's injuries substantially certain to occur. It is not akin to "deliberately instruct[ing] an employee to injure himself." Suarez I, supra, 110;Suarez II, supra, 258. It is not tantamount to "an intentional left jab to the chin." 2A A. Larson, Workmen's Compensation (1990) 68.13, p. 13-71. This case is factually similar to Melanson rather than Suarez, because inSuarez the plaintiff was told to place his arm in a machine while it was in operation and that he would be fired if he tried to use a safer method of cleaning the machine. In this case, as in Melanson, the employer took no affirmative action to injure its employee but rather failed to provide certain enumerated safety measures.[3]
Adding the allegation that Waterford Petroleum "made a conscious decision, based upon its economic interests" to allow its employees to continue to work under such conditions does not warrant a different conclusion. As Judge Corradino stated in Recalde v. Emhart Industries,Inc., Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 053222 (February 4, 1999), when presented with the same argument, "[i]f there is no belief by the employer that with substantial certainty injury will result from its actions in the first place how can the employer's acts be based on a `cost out' calculation?"1999 Ct. Sup. 1272, 1287.
Conclusion
For the foregoing reasons, the court grants Waterford Petroleum's motion to strike count three of the plaintiff's complaint as barred by the exclusivity provision of the Workers' Compensation Act and not within the narrow exception to the Act.
BY THE COURT
McLachlan, J.